Janeta KUTINA, Petitioner,

v.

BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES, Respondent.

No. 03–40468–AG NAC.

United States Court of Appeals, Second Circuit.

Dec. 22, 2005.

Theodore N. Cox, New York, New York, for Petitioner.

Kenneth L. Wainstein, United States Attorney for the District of Columbia; Madelyn E. Johnson, Assistant United States Attorney; Julia K. Douds, Special Assistant United States Attorney, Washington, District of Columbia, for Respondent.

PRESENT: Hon. JON O. NEWMAN, Hon. RICHARD C. WESLEY, and Hon. PETER W. HALL, Circuit Judges.

## SUMMARY ORDER

Janeta Kutina, through counsel, petitions for review of the BIA order affirming the immigration judge's ("IJ") decision denying her application for asylum and withholding of deportation. We assume the parties' familiarity with the underlying facts and procedural history of this case.

This Court reviews the IJ's findings of fact, including adverse credibility findings, under the substantial evidence standard. *See* 8 U.S.C. § 1252(b)(4)(B); *Jin Hui Gao v. United States Att'y Gen.,* 400 F.3d 963, 964 (2d Cir.2005); *Zhou Yun Zhang v. INS,* 386 F.3d 66, 73–79; *Ramsameachire v. Ashcroft,* 357 F.3d 169, 178–83 (2d Cir. 2004); *Secaida–Rosales v. INS,* 331 F.3d 297, 306–13 (2d Cir.2003); *Diallo v. INS,* 232 F.3d 279, 286–88 (2d Cir.2000).

The IJ apparently misunderstood the evidence regarding the deaths of Kutina's father and husband and failed to consider her husband's death at all. Kutina testified that her father had been warned not to go to synagogue, that he was beaten

when he did, and that he died as a result of a blow to the head. Kutina submitted a death certificate stating that her father had died in part due to thrombosis, which Kutina characterized as "internal bleeding." The IJ, however, "found that the medical evidence regarding the cause of the father's death was attributable to 'heart attack.'" In so finding, the IJ most likely confused the death of Kutina's father with that of her husband, the latter of whom the IJ failed to mention at all. Kutina testified that police from the new Latvian government broke into her husband's office, aggressively interrogated him about his work with Jews, and that the secretary then discovered him lying unconscious, having died of a heart attack. Kutina submitted a death certificate confirming that her husband died of a heart attack.

The IJ's error here requires us to remand in order for this Court to conduct meaningful judicial review. *See Poradisova v. Gonzales*, 420 F.3d (2d Cir.). In particular, a proper review of the facts regarding the death of Kutnia's father and husband is necessary to assess whether or not she had a well-founded fear of future persecution.

■ This case must also be remanded because the IJ's adverse credibility determination is flawed. Here, the IJ observed that Kutina's initial asylum application omitted several of the events to which she testified. However, the IJ did not identify these events. Even assuming that the IJ referred to the omission of the deaths of Kutina's family members, the IJ failed to acknowledge Kutina's explanations for their absence, and in doing so, failed to "point to valid reasons for rejecting [her] testimony." *Secaida–Rosales*, 331 F.3d at 311; *see Cao He Lin v. U.S. Dep't of Justice*, 428 F.3d 391, 402 (2d Cir.2005).

We also question the IJ's finding that Kutina's receiving a pension from the gov-

ernment was "another adverse credibility feature." The IJ failed to explain in what manner receiving a state pension impacted Kutina's claim that she had been persecuted in Latvia and, thus, the IJ did not provide "specific, cogent reasons" that had a "legitimate nexus" to this finding. *See Secaida–Rosales*, 331 F.3d at 307.

Additionally, the record does not support the IJ's finding that Kutina's written application was inconsistent with her testimony, and the IJ did not point to any alleged inconsistencies. It is likely that the IJ found the omission of the deaths of Kutina's family members from her initial application to be inconsistent with her testimony, which would not comprise a separate finding.

The IJ's past persecution analysis is also flawed in several respects. The IJ found that the experiences of Kutina's family prior to 1991 were "remote" due to the material and substantial change in country conditions given the collapse of the Soviet Republic, but did not reference the State Department report on Latvia and did not indicate how changes in country conditions directly impacted an evaluation of past persecution or a well-founded fear of persecution. This finding thus does not support a denial of Kutina's asylum claim. In addition, the IJ erroneously assessed the events described by Kutina in isolation, without considering their cumulative significance. *See Poradisova v. Gonzales*, 420 F.3d 70, 79–80 (2d Cir.2005). The IJ also erred when he failed to assess the impact of the incident in which a group of Latvians broke up a Jewish student meeting that Kutina had attended. The IJ did not even acknowledge this incident, despite this Court's requirement that the IJ consider material evidence provided to support an applicant's claim. *See Poradisova*, 420 F.3d at 77.

Remand is necessary in this case because the erroneous grounds are not so tangential to the IJ's findings and the evidence supporting those findings is not so overwhelming that it is clear the IJ would reach the same result on remand. *Cao He Lin,* at 403.

For the foregoing reasons, the petition for review is GRANTED, the BIA's August 2003 decision is VACATED, and the case is REMANDED for further proceedings consistent with this decision.

Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DENIED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(d)(1).